CASE NO. 15-1724
IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

− v. −

**EARNEST LEE PROGE,**

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

_____

**OPENING BRIEF OF APPELLANT EARNEST LEE PROGE**

_____

KEVIN M. CARLSON (MI - P67704)
MELISSA M. SALINAS (MI - P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic
363 Legal Research Building, 801 Monroe Street
Ann Arbor, MI 48109-1215
Ph: 734-763-4319
kcarlson@umich.edu
salinasm@umich.edu
*Counsel for Earnest Lee Proge*


Douglas Tifft and Marisa Berlinger
University of Michigan Law School
Federal Appellate Litigation Clinic
*Law Students on Brief*

# TABLE OF CONTENTS

Table of Contents .................................................................................................... i

Table of Authorities ............................................................................................. iv

Statement Regarding Oral Argument ..................................................................... x

Jurisdictional Statement ........................................................................................ 1

Statement of Issues Presented ............................................................................... 2

Statement of the Case ............................................................................................ 3

Summary of the Argument .................................................................................. 14

Argument ............................................................................................................. 15

I.  The district court violated Proge's Sixth Amendment rights by ordering him to go to trial without his counsel of choice. ............................................... 15

  A. Introduction ............................................................................................... 15

  B. Standard of review. .................................................................................... 16

  C. Proge timely informed the court of his decision to hire new counsel. .......... 17

  D. The district court conducted an inadequate inquiry into Proge's request to change the status of his representation. ........................................ 19

  E. The district court erroneously required Proge to show prejudice, and failed to acknowledge counsel's role in the breakdown of the relationship. .............................................................................................. 22

F. The reasons cited for denying Proge's choice of counsel were insufficient to defeat the presumption in favor of the defendant's right to choose counsel. ................................................................................ 25

II. The district court erroneously entered judgment of conviction on Count 3 after the jury found Proge not guilty on that Count. .....................................28

III. The district court erred in denying Proge's motion for directed verdict for insufficient evidence on Counts 1, 2, and 10.................................................30

    A. Standard of Review......................................................................................30

    B. The government failed to prove Proge's guilt beyond a reasonable doubt as to the drug conspiracy charged in Count 1. ....................................30

    C. The government failed to prove Proge's guilt beyond a reasonable doubt that Proge possessed heroin with the intent to distribute under Count 2.........................................................................................................40

    D. The government failed to prove Proge's guilt beyond a reasonable doubt as to the money laundering conspiracy charged in Count 10..............41

IV. The court erred by failing to instruct the jury on the elements of aiding and abetting and improperly instructing the jury Proge was charged in Count 4. ......................................................................................................44

    A. Standard of Review......................................................................................44

    B. The court plainly erred by failing to instruct the jury on aiding and abetting.........................................................................................................45

    C. The court erred by instructing the jury Proge was charged in Count 4 of the indictment. ........................................................................................48

V. The district court erred in denying the suppression of evidence obtained through warrantless searches when the government tracked Proge's location through the use of cell phone location data, a GPS tracker, and pole cameras. ................................................................................................50

ii

   A. Standard of Review..................................................................................50

   B. Proge had a reasonable expectation of privacy in Carlos Powell's cell phone, Eric Powell's truck, and the areas viewable by pole camera at the Stricker residence and Centerline warehouse..........................................50

Conclusion ......................................................................................................59

Certificate of Compliance ..............................................................................60

Certificate of Service ......................................................................................61

Appellant's Designation of Relevant District Court Documents ............................62

# TABLE OF AUTHORITIES

**Cases**

*Andersen v. Treat,*
172 U.S. 24 (1898)..................................................................................15

*Autoworld Specialty Cars, Inc. v. United States*,
815 F.2d 385 (6th Cir. 1987). ...........................................................56

*Benitez v. United States*,
521 F.3d 625 (6th Cir. 2008). .................................... 8, 16, 19, 20, 21, 22, 24

*Cobb v. Warden, Chillicothe Corr. Inst.*,
466 F. App'x 456 (6th Cir. 2012) (unpublished). ...................................16, 25

*Dow Chem. Co. v. U.S. ex. rel. Burford*,
749 F.2d 307 (6th Cir. 1984), *aff'd sub nom. Dow Chem. Co. v. United States*, 476 U.S. 227 (1986)......................................................................56, 57

*Henness v. Bagley*,
644 F.3d 308 (6th Cir. 2011). ..........................................................18

*Jackson v. Virginia*,
443 U.S. 307 (1979).......................................................................30

*Linton v. Perini*,
656 F.2d 207 (6th Cir. 1981). .......................................................16, 19, 26

*Martel v. Clair*,
132 S. Ct. 1276 (2012). ..................................................................19

*Morris v. Slappy*,
461 U.S. 1 (1983).........................................................................25

*New York v. Burger*,
482 U.S. 691 (1987)......................................................................56

*Nye & Nissen v. United States,*
336 U.S. 613 (1949). ....................................................................45

*Sullivan v. Louisiana*,
508 U.S. 275 (1993)..................................................................................25

*United States v. Baldwin*,
114 F. App'x 675 (6th Cir. 2004)...........................................................52

*United States v. Beauchamp*,
659 F.3d 560 (6th Cir. 2011) ..................................................52, 53, 54, 55

*United States v. Blackwell*,
459 F.3d 739 (6th Cir. 2006) ................................................................49

*United States v. Brown*,
448 F.3d 239 (3d Cir. 2006) ................................................................54

*United States v. Chambers*,
441 F.3d 438 (6th Cir. 2006). ..............................................................18

*United States v. Christian*,
786 F.2d 203 (6th Cir. 1986). ..........................................................31, 33

*United States v. Coppin*,
1 F. App'x 283 (6th Cir. 2001) (unpublished)............................32, 33, 38, 39

*United States v. Cotton*,
535 U.S. 625 (2002)..............................................................................47

*United States v. Dupree*,
617 F.3d 724 (3d Cir. 2010) ................................................................54

*United States v. Erwin*,
875 F.2d 268 (10th Cir. 1989). ..........................................................54

*United States v. Fischel*,
686 F.2d 1082 (5th Cir. 1982)............................................................46, 47

*United States v. Fowler*,
42 F.3d 1389 (6th Cir. 1994) (unpublished)..........................................54, 55

*United States v. Gaudin*,
    515 U.S. 506 (1995). ..............................................................29

*United States v. Gibbs*,
    182 F.3d 408 (6th Cir. 1999). ...........................................32, 34

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006)............................... 15, 22, 23, 25, 26, 28

*United States v. Grubbs*,
    506 F.3d 434 (6th Cir. 2007). ..............................................30

*United States v. Iles*,
    906 F.2d 1122 (6th Cir. 1990). .................................16, 19, 24

*United States v. Layne,*
    192 F.3d 556 (6th Cir. 1999)..............................................44

*United States v. Lopez-Medina*,
    461 F.3d 724 (6th Cir. 2006). ..............................................50

*United States v. Machen,*
    576 F. App'x 561 (6th Cir. 2014) (unpublished). ...............47, 48

*United States v. Marrero*,
    651 F.3d 453 (6th Cir. 2011). ...........................................16, 25

*United States v. Marshall*,
    248 F.3d 525 (6th Cir. 2001). ..............................................42

*United States v. Martin,*
    520 F.3d 656 (6th Cir. 2008).............................................44

*United States v. Martinez*,
    430 F.3d 317 (6th Cir. 2005). ..........................................30, 31

*United States v. McDougald,*
    990 F.2d 259 (6th Cir. 1993) .............................................42, 44

*United States v. Morrison*,
220 F. App'x 389 (6th Cir. 2007) (unpublished). ..........................................33

*United States v. Morrow*,
977 F.2d 222 (6th Cir. 1992) ...............................................................47

*United States v. Newsom,*
452 F.3d 593 (6th Cir. 2006)..........................................................40, 47

*United States v. Olano,*
507 U.S. 725 (1993). ...........................................................................44

*United States v. Oliver,*
397 F.3d 369 (6th Cir. 2005)...............................................................44

*United States v. Padilla*,
508 U.S. 77 (1993)........................................................................52, 53

*United States v. Pearce*,
912 F.2d 159 (6th Cir. 1990). .....................................................32, 38, 39

*United States v. Prince,*
214 F.3d 740 (6th Cir. 2000)................................................................49

*United States v. Prince*,
618 F.3d 551 (6th Cir. 2010). ..............................................................41

*United States v. Randolph*,
794 F.3d 602 (6th Cir. 2015)................................................................29

*United States v. Reed*,
77 F.3d 139 (6th Cir. 1996). ...........................................................41, 42

*United States v. Sellers,*
645 F.3d 830 (7th Cir. 2011)................................................................26

*United States v. Shephard*,
495 F. App'x 553 (6th Cir. 2012) (unpublished). ....................................55

*United States v. Smith*,
  320 F.3d 647 (6th Cir. 2003)………………………………………………….49

*United States v. Smith*,
  263 F.3d 571 (6th Cir. 2001). ...............................................................50, 51

*United States v. Warner*,
  690 F.2d 545 (6th Cir. 1982). ......................................................................49

*United States v. Welty,*
  674 F.2d 185 (3d Cir. 1982). ........................................................................19

*Wheat v. United States*,
  486 U.S. 153 (1988)....................................................................15, 16, 25, 28

*Wilson v. Mintzes*,
  761 F.2d 275 (6th Cir. 1985). ................................................15, 16, 22, 26, 27

*Ybarra v. Illinois,*
  444 U.S. 85 (1979). ...............................................................................57, 58

## Statutes

18 U.S.C. § 2 ...................................................................................................1

18 U.S.C. § 922 ...............................................................................................1

18 U.S.C. § 1956 ........................................................................................1, 42

21 U.S.C. § 841 ....................................................................................1, 30, 31

21 U.S.C. § 846 ...............................................................................................1

28 U.S.C. § 1291 .............................................................................................1

## Rules

Fed. R. App. P. 28 .......................................................................................2, 50

Fed. R. App. P. 32............................................................................60

Fed. R. App. P. 34.............................................................................x

Fed. R. Crim. P. 29..........................................................................30

**Constitutional Amendments**

U.S. Const. amend. IV. ...............................................................*passim*

U.S. Const. amend. V.....................................................................29

U.S. Const. amend. VI. ..............................................................*passim*

**Other Authorities**

William N. Beaney,
    *The Right to Counsel in American Courts* (1955)........................................15

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Earnest Lee Proge requests oral argument pursuant to Fed. R. App. P. 34(a).  The record is lengthy and complicated, spanning more than 9,000 pages.  Oral argument will assist the Court in assessing the arguments regarding the district court's jury instructions, the sufficiency of the government's proofs, and Proge's Sixth Amendment counsel claim.

This appeal is litigated with the assistance of the University of Michigan Law School's Federal Appellate Litigation Clinic. Undersigned counsel intends to request this Court allow the students on brief to argue this case.  Due to the rigorous preparation included in the clinic's curriculum, oral argument would likely be of assistance in this Court's decision-making.

# JURISDICTIONAL STATEMENT

Original jurisdiction in the Eastern District of Michigan was based on an indictment alleging violations of 21 U.S.C. §§ 841 *et seq.*; 21 U.S.C. §846, 18 U.S.C. §§ 2, 18 U.S.C. § 922(g), and 18 U.S.C. §§ 1956 *et seq.*  A jury convicted Proge on Counts 1, 2, 8, and 10 of that indictment, [R. 337, Verdict Form, PageID# 2651-52, 2654-56], and the district court sentenced Proge to thirty years in prison and five years of supervised release.  [R. 589, Sentencing, PageID# 9386].  Proge filed this timely appeal.  [R. 558, Notice of Appeal, PageID# 7217]. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court violated Proge's Sixth Amendment rights by denying his request to dismiss retained counsel and pursue his counsel of choice.

2. Whether the district court erred by entering a judgement against Proge on Count 3 after the jury returned a not guilty verdict.

3. Whether the district court erred in denying Proge's motion for directed verdict after the government did not present sufficient evidence of knowledge or specific intent for participation in a drug trafficking or money laundering conspiracy, as alleged in Counts 1 and 10, and possession with intent to distribute heroin, as alleged in Count 2.

4. Whether the district court erred by failing to instruct the jury on the elements of aiding and abetting, and improperly instructing the jury that Proge was charged in Count 4.

5. Whether district court erred in denying the suppression of evidence obtained through warrantless searches through which the government tracked Proge's location through cell phone location data, a GPS tracker, and pole cameras. Proge joins in issues II and III of Carlos Powell's appellate brief, 6th Cir. Case No. 14-2506, under Fed. R. App. P. 28(i).

## STATEMENT OF THE CASE

### I. Investigation and arrest.

In 2008, Drug Enforcement Agency (DEA) agents began an investigation of drug trafficking activity in Detroit, Phoenix and Chicago. [PSR, p. 8.]. The targets were two brothers—Carlos and Eric Powell of Detroit—whom the government alleged were the leaders of a large drug trafficking ring. [*Id*.].

During this time, Earnest Lee Proge operated his own auto body repair garage on the East Side of Detroit to support his wife and seven children. [R. 502, Sentencing Memo., PageID# 5488-89]. There is no indication of any association between Proge and either of the Powell brothers for the first two years of the DEA investigation. [R. 589, Sentencing, PageID# 9366].

During the course of surveillance between June 2010 and November 2010, DEA agents observed five points of contact between Proge and the Powell brothers. The government's evidence consists of primarily silent video and photo evidence; there are no recorded conversations of Proge. The evidence established a pattern—the Powell brothers would fill suitcases with money or drugs, lock the suitcases, load them into various vehicles, and have some other person transport the suitcases. [R. 492, Vol. III, PageID# 4528; R. 493, Vol. IV, PageID# 4570-77; R. 494, Vol. V, PageID# 4675]. The only fingerprints found on items seized were the Powells'. [R. 494, Vol V, PageID# 4713, 4715; R. 497, Vol. VIII, PageID#

5301]. Unlike Eric Powell, a.k.a. "55," and Carlos Powell, a.k.a. "50," Proge did not have a numerical code name. [R. 491, Vol. II, PageID# 4369; R. 497, Vol. VIII, PageID# 5307]. The Powell brothers were convicted of five Counts. [R. 337, Verdict Form]. Both received life sentences. [R. 499, Carlos Powell Sentencing, PageID# 5436; R. 500, Eric Powell Sentencing, PageID# 5648].

In contrast, giving the government the benefit of every doubt, the evidence against Proge was limited to showing that he worked as a courier or "mule." In each of the five contacts proven at trial, Proge was merely driving a vehicle. [R. 491, Vol. II, PageID# 4287; R. 492, Vol. III, PageID# 4415; R. 493, Vol. IV, PageID# 4593; R. 494, Vol. V, PageID# 4679; R. 496, Vol. VII, PageID# 5090].

As a key government witness explained at trial, driving a car in relation to a drug organization is usually the role of a "cowboy"—the modern term for a mule in the drug industry. [R. 491, Vol. II, PageID# 4359 (stating the term "cowboy" is coded language for "driver"); *cf. id.* at 4356 ("these people who were the . . . burros, mules, these are the mules that bring the drugs over, they didn't necessarily know the next step")].

By the time its investigation was completed, the government had seized heroin, jewelry, stacks of cash, and expensive cars at homes owned by the Powells. [R. 496, Vol. VII, PageID# 5042, 5060, 5065, 5103-04]. The record does not show Proge ever physically touched any of the money or drugs or appeared at either of

the two stash houses associated with the Powells. [R. 491, Vol. II, PageID# 4331; R. 493, Vol. VI, PageID# 4570-77; R. 494, Vol. V, PageID# 4728-29].

## II. Prosecution and trial.

### A. Proge seeks to change counsel and the district court denies him counsel of choice.

Following his arraignment, Proge hired private counsel, Linda Bernard, to represent him. [R. 587, Withdrawal Hrg., PageID# 9152]. Bernard hired Patricia Maceroni to assist with the case. [R. 258, Mot. to Withdraw, PageID# 1993].

On March 26, 2014, during the final pretrial conference, Proge's counsel informed the court they would be filing a motion to withdraw. [R. 490, Final Pretrial, PageID# 4203]. Counsel made two points: First, "Proge has decided that he wants to go to trial" and second, "he prefers new counsel, and he's prepared to either petition the government for that counsel and/or obtain private counsel." [*Id*. at 4205].

The court briefly questioned Proge, who said the proposed plea agreement "was like an apple being forced down [his] throat" because he "didn't really feel [he] had enough time to make a proper decision." [R. 490, Final Pretrial, PageID# 4209]. After confirming Proge wished to reject the plea and proceed to trial, the court did not ask further questions. [*Id.* at 4209-10]. The court assured it would "make a further inquiry prior to trial" because there was "a little football left"

before trial. [*Id.* at 4210]. The court cautioned, "Proge is going to very likely be having a trial on the 29th of April either with competent counsel or himself." [*Id.* at 4211].

On April 3, 2014, counsel filed a written motion to withdraw. [R. 258, Mot. to Withdraw, PageID# 1992-98]. At the motion hearing, Bernard began her argument with the alarming assertion that she and her co-counsel had only agreed to represent Proge for a limited purpose: to negotiate a plea agreement and file a brief concurring in the co-defendants' motion to suppress. [R. 587, Withdrawal Hrg., PageID# 9143].

Bernard admitted that because of the limited scope of retention, she and co-counsel "did not obviously prepare for trial." [R. 587, Withdrawal Hrg., PageID# 9146]. Proge's counsel repeated there had been a "complete and total breakdown" of the attorney-client relationship. [*Id.*].

Following counsel's argument, and before conducting any direct inquiry with Proge, the court stated it had already formed an opinion as to the circumstances of the breakdown and counsel's motion to withdraw:

> I think this is a ploy. I think he's trying to delay the trial. I think he's trying to interfere with the administration of justice. I think he's trying to prohibit the fair adjudication of claims by his co-defendants. And I've seen nothing, nothing wrong with the representation given by the counsel in this case…And that's what I think the Sixth Amendment is concerned with not, whether or not criminal defendants have the right

to play games with the schedule of the Court in a case that's been pending for two-and-half years.

[R. 587, Withdrawal Hrg., PageID# 9151]. Proge's counsel responded: "we still have to protect the Sixth Amendment, and we still [] have to protect his rights . . . to have . . . counsel . . . that he can work with[.]" [*Id.* at 9151-52].

Proge told the court he did not want to proceed with Bernard and Maceroni as his lawyers. [R. 587, Withdrawal Hrg., PageID# 9153]. Proge said his counsel "made statements that they didn't want to represent me in trial." [*Id.* at 9154]. Proge told the court he did not want attorneys "that don't want me" and, "I don't feel that I would get proper representation from them." [*Id.*].

The court asked whether Proge wanted "to go hire a new lawyer now[?]" [R. 587, Withdrawal Hrg., PageID# 9154]. Proge's answer: "If possible, yes." [*Id.*]. Counsel reiterated: "he would like to retain new counsel." [*Id.* at 9159].

Proge's counsel filed a supplemental brief clarifying "that current counsel have advised this Honorable Court that there has been an irreconcilable breakdown in the attorney-client relationship. Both attorneys believe, as officers of the Court, that they cannot be effective counsel[.]" [R. 267, Supp. Mot. to Withdraw, PageID# 2051]. Counsel made clear they could "not fulfill their legal and ethical obligations to provide effective assistance to Proge[,]" and implored the court allow them to withdraw so Proge could pursue other options. [*Id.*]

7

The government supported counsel's motion to withdraw. [R. 268, Govt. Suppl. Br., PageID# 2053-60]. The government "recommend[ed] that the Court grant the request out of an abundance of caution, in part based on the degree of conflict between the Defendant and his attorneys—an issue that bears on both the pending motion and, if there is a conviction, a potential ineffective assistance of counsel claim." [*Id*. at 2053-54].

Notwithstanding the pleas of Proge and his counsel, and notwithstanding the government's recommendation, the district court denied counsel's motion. [R. 282, Order, PageID# 2144]. The court ruled the motion was not timely and Proge was not entitled to a continuance to find new counsel. [*Id.* at 2147-48]. The court acknowledged its duty to inquire as to the basis of Proge's dissatisfaction with counsel, [R. 587, Withdrawal Hrg., PageID# 9142], and decided its inquiry during the motion hearing was adequate under *Benitez v. United States*, 521 F.3d 625, 632-33 (6th Cir. 2008). [R. 282, Order, PageID# 2148 at n. 2].

The court ruled the conflict between Proge and counsel did not warrant withdrawal or substitution because it was based only on Proge's disagreement with counsel's advice to accept a plea, the conflict was caused by Proge's failure to communicate with counsel, and it was merely a ploy to delay or manipulate trial. [R. 282, Order, PageID# 2149-51]. The court faulted Proge because he "did not

8

explain how a new attorney would add to his defense over his current attorneys."
[*Id.* at 2151 at n. 5].

In a motion for reconsideration, Maceroni indicated the court had erred in stating there were no ethical violations implicated in their continued representation of Proge. [R. 284, Mot. for Reconsid., PageID# 2159-2160]. She stated, "Counsel cannot effectively represent Proge[.] By forcing Counsel to continue . . . she will be violating . . . [five different rules of professional conduct.]." [*Id.* at 2160]. Maceroni stated she was incompetent to represent Proge through trial because "[n]o investigation or preparation of a defense to the conspiracy charge has been done, rendering [counsel] incompetent." [R. 284, Mot. for Reconsid., PageID# 2160].

Maceroni also opposed the suggestion of her appointment as CJA counsel, stating: "Given the complete breakdown…there is no way Defense Counsel can render effective assistance of counsel." [R. 284, Mot. for Reconsid., PageID# 2162]. She concluded "it is Counsel's position that [the district court would be] ordering Proge to trial with ineffective counsel." [*Id.* at 2163].

Bernard also moved for reconsideration. Bernard stated she had "never handled a criminal jury trial or bench trial in federal court and [has] limited knowledge of the FRE and FRCP . . . [and therefore] cannot provide Proge 'effective assistance of counsel' in a capital case. I am not on the Roster of

Approved Counsel for Indigent Defendants for that reason." [R. 288, Mot. to Withdraw, PageID# 2206]. Bernard stated: "<u>I am not qualified or competent to handle trial of this matter.</u>" [*Id.* at 2207 (emphasis in original)].

In response, the government stated "the most cautious approach would be to allow counsel to withdraw from the case for reasons stated in [the government's original] brief." [R. 298, Govt. Resp. to Mot. for Reconsid., PageID# 2370].

The court granted Bernard's motion to withdraw but denied Maceroni's motion, [R. 302, Order Mot. for Reconsid., PageID# 2400-2406], thus forcing Proge to trial with counsel who was actively telling the court it was "ordering Mr. Proge to trial with ineffective counsel." [R. 284, Mot. for Reconsid., PageID# 2163]. Trial commenced the next day with jury *voir dire*. [*See* R. 588, Vol. I].

## B. Trial Proceedings, Jury Instructions, and Verdict.

### i. The government charged Proge in five counts.

The government charged Proge in Counts 1, 2, 3, 8, 10, and 13 of the superseding indictment. [R. 171, Indictment].[1] Count 1 charged conspiracy to distribute marijuana, cocaine, and heroin. [R. 171, Indictment, PageID# 1289-92]. Count 2 charged possession with intent to distribute heroin, aiding and abetting, based on the June 23, 2010 arrest of Whigham and seizure of heroin from the

---

[1] The government voluntarily dismissed Count 13 by motion prior to trial. [R. 299, Motion to Dismiss].

Volkswagen driven by Whigham. [*Id.* at 1292]. Count 3 charged Proge, the Powell brothers and Margarita Lopez de Vallejo with possession with intent to distribute cocaine. [*Id.* at 1292-93].

The government did not charge Proge in Count 4 of the indictment, which alleged possession with intent to distribute cocaine as to the Powell brothers. [R. 171, Indictment, PageID# 1293]. The charge against the Powell brothers in Count 4 was premised on their alleged possession with intent to distribute heroin on November 17, 2010. [*Id.*].

In Count 8, the government charged Proge with being a felon in possession of a firearm at the time of his arrest on November 17, 2010. [R. 171, Indictment, PageID# 1295].

In Count 10, the government charged Proge, along with the Powell brothers and others, of conspiracy to launder money instruments. [R. 171, Indictment, PageID# 1296-97]. The factual bases for this charge as to Proge were: (1) police seized money from the Ford Flex when Proge was arrested on September 17, 2010, [*Id.* at 1298], and (2) in July of 2010, Eric Powell and Proge allegedly used a nominee to purchase or assist in purchasing a 2002 Regal Commodore boat in the nominee's name for approximately $40,000.00. [*Id.* at 1299].[2]

_____

[2] The government abandoned and dismissed this claim. [R. 496, Vol. VII, PageID# 5132-33]

### ii. The court's instructions.

The court erroneously instructed the jury that Proge was charged under Count 4, alleging possession with intent to distribute cocaine. [*See* R. 171, Indictment, PageID# 1293; R. 497, Vol. VIII, PageID# 5345]. The court told the jury: "Carlos Powell, Eric Powell and Earnest Proge are charged in Count 2, 3 and 4 with the Crime of Possession of Cocaine or Heroin with Intent to Distribute." [R. 497, Vol. VIII, PageID# 5345].

Count 2 charged Proge with possession with intent to distribute heroin, aiding and abetting, but the court failed to instruct the jury on aiding and abetting. [R. 171, Indictment, PageID# 1292; R. 497, Vol. VIII, PageID# 5345-50].

### iii. The jury found Proge guilty as to Counts 1, 2, 8, and 10 and not guilty as to Count 3.

The jury found Proge guilty on Count 1 (conspiracy to distribute drugs), Count 2 (possession with intent to distribute heroin, aiding and abetting, based on the June 23, 2010 arrest of Whigham and seizure of heroin from the Volkswagen driven by Whigham), Count 8 (felon in possession of a firearm) and Count 10 (conspiracy to launder money instruments). The jury found Proge not guilty on Count 3 (possession with intent to distribute cocaine). [R. 337, Verdict Form, PageID# 2648-2656].

**C. Sentencing.**

The entered a judgement of guilty on Counts 1, 2, 3, 8 and 10, even though the jury found Proge not guilty on Count 3. [R. 556, Judgment, PageID# 7020-22; R. 337, Verdict Form, PageID# 2654]. The district court sentenced Proge to concurrent terms of imprisonment of "360 months on Counts 1 through 3," 240 months on Count 10, and 120 months on Count 8. [*See id.*; R. 589, Sentencing, PageID# 9386; 9387-92].

## SUMMARY OF THE ARGUMENT

The fundamental right to counsel of choice is at the core of this case. Earnest Proge hired two attorneys who did not prepare for trial. He attempted to dismiss those attorneys and find new counsel. The district court did not complete its duty to fully inquire into Proge's dissatisfaction and refused to honor his choice to seek new counsel—even after Proge's attorneys proclaimed themselves incompetent and admitted their lack of preparation. This failure to honor Proge's choice was a structural error and demands a new trial in this case.

Proge's convictions were also premised on guilt by association, when at best there was evidence he was a mule in a larger conspiracy. The district court failed to dismiss Counts of laundering money, possessing heroin with intent to distribute, and joining a drug conspiracy, even though there was insufficient evidence against Proge for those Counts. In fact, the district court prejudiced the jury by adding a charge against Proge that was not in the indictment, and entered judgment of conviction on a Count on which the jury found him not guilty. Finally, the district court admitted illegally obtained evidence, in violation of the Fourth Amendment.

These errors demand that this Court reverse the judgment of the district court.

**ARGUMENT**

**I.     The district court violated Proge's Sixth Amendment rights by ordering him to trial without his counsel of choice.**

**A. Introduction.**

For decades, the right to counsel of choice "has been regarded as the root meaning of the [Sixth Amendment] constitutional guarantee." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006) (citing *Wheat v. United States*, 486 U.S. 153 (1988); *Andersen v. Treat*, 172 U.S. 24 (1898); William N. Beaney, *The Right to Counsel in American Courts* (1955)). It "commands, not that the trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id*. at 146. A defendant erroneously deprived of counsel of choice is not required to show prejudice to obtain reversal. *Id*. A violation of the right is complete when counsel of choice is denied, regardless of how the new counsel performs. *Id*. Erroneous deprivation of counsel of choice is a structural error requiring automatic reversal. *Id*. at 150.

The "primary purpose of the Sixth Amendment is to grant a criminal defendant effective control over the conduct of his defense." *Wheat*, 486 U.S. at 165 (Marshall, J., dissenting); *see also Wilson v. Mintzes*, 761 F.2d 275, 279 (6th Cir. 1985) ("were a defendant not provided the opportunity to select his own

counsel . . . substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut.") (quoting *Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981), *cert. denied,* 454 U.S. 1162 (1982)).

**B. Standard of Review.**

This Court reviews a district court's denial of a motion to substitute counsel for an abuse of discretion, considering "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Benitez v. United States*, 521 F.3d 625, 635 (6th Cir. 2008) (quoting *United States v. Iles*, 906 F.2d 1122, 1130 at n. 8 (6th Cir. 1990)). The district court also must consider the interests of justice, meaning "*both* [the defendant's] rights and the rights of the public." *Cobb v. Warden, Chillicothe Corr. Inst.*, 466 F. App'x 456, 463 (6th Cir. 2012) (unpublished) (emphasis in original) (citing *United States v. Marrero*, 651 F.3d 453, 467 (6th Cir. 2011)). Choice of counsel challenges are entitled to a "presumption in favor of [the defendant's] counsel of choice." *Wheat*, 486 U.S. at 164.

### C. Proge timely informed the district court of his decision to hire new counsel.

Proge's request for counsel of choice was timely. On March 25, 2014, the day before the final pre-trial conference, Proge first learned his retained lawyers were not preparing to represent him at trial. [R. 282, Order, PageID# 2146; R. 587, Withdrawal Hrg., PageID# 9145-46].

The next day, Proge informed the court of his desire to dismiss those attorneys and locate new counsel. [R. 490, Final Pretrial, PageID# 4203]. At that hearing, Proge's counsel stated "he prefers new counsel, and he's prepared to either petition the government for that counsel and/or obtain private counsel." [*Id.* at 4205]. The court did not inquire into the choice of counsel issue at that time, but assured the parties it would "make a further inquiry prior to trial" because there was "a little football left" before trial. [*Id.* at 4210].

Under these circumstances, March 26, 2014 was the earliest Proge could have raised the issue of changing attorneys. He did just that. Proge could hardly have been more expeditious—short of calling the district court from his attorney's office the previous afternoon.

The district court did not see it this way. Instead of focusing on the fresh rift between Proge and counsel, the court looked backward at how "aged" the case had become, and forward at a trial still 34 days away. [R. 282, Order, PageID# 2147].

The retrospective view found that the case was two years old, and Proge had not complained about counsel prior to March 26. [*Id.*]. This failed to recognize the relevant facts on the record. The court based its analysis on *United States v. Chambers*, which denied a defendant's request for new appointed counsel because the genesis of the dissatisfaction was "nearly a year" old. 441 F.3d 438, 447 (6th Cir. 2006); [R. 282, Order, PageID# 2147]. Yet Proge's dissatisfaction was only a day old when he brought it to the district court.

On the prospective side, the district court, addressing the issue nearly a month after Proge's request, faulted Proge for "untimely" raising the issue on the eve of the trial date. [R. 282, Order, PageID# 2147]. But Proge's request was not a "last-minute" attempt for a continuance of the kind this Court has found to be untimely. *See, e.g., Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011). In fact, it was counsel, not Proge, who initiated the withdrawal and substitution process by informing Proge their retention was limited to plea negotiations, leaving him without counsel. Further, there were still 34 days remaining before trial when Proge told the court he wanted to dismiss counsel. This gave the court ample time to honor Proge's Sixth Amendment rights. Indeed, since the district court warned Proge his trial would start on time whether he was represented or not, [R. 490, Final Pretrial, PageID# 4211], Proge could have had new counsel without requiring a new trial date.

The district court erred in concluding Proge's attempt to dismiss retained counsel of choice was untimely. Since it is a constitutional violation for a district court to exercise docket control in such an arbitrary manner, *see Linton*, 656 F.2d at 212, Proge is entitled to a new trial.

**D. The district court conducted an inadequate inquiry into Proge's request to change the status of his representation.**

"As all Circuits agree, courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer." *Martel v. Clair*, 132 S. Ct. 1276, 1288 (2012) (citing *Iles*, 906 F.2d at 1130) ("It is hornbook law that [w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction.") (internal citations omitted). Failing to complete the inquiry undermines the judicial system, as the inquiry "serves to ease the defendant's distrust[,] preserve the integrity of the trial process, and [] foster confidence in the jury verdict." *Iles*, 906 F.2d at 1131 (citing *United States v. Welty*, 674 F.2d 185, 190 (3d Cir. 1982)).

"Once a defendant [brings any serious dissatisfaction with counsel to the attention of the district court], the district court is obligated to inquire into the defendant's complaint and determine whether there is good cause for the substitution." *Benitez*, 521 F.3d at 632 (6th Cir. 2008). Pursuant to that obligation,

19

"the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction—regardless of whether the attorney is court-appointed or privately retained." *Benitez*, 521 F.3d at 634 (internal citations omitted). This inquiry is designed to protect the defendant's Sixth Amendment right to counsel of choice. *Id*. at 635. Failure to complete this required inquiry is an abuse of the district court's discretion. *Id*.

Here, Proge and counsel expressed mutual dissatisfaction and informed the court of Proge's decision to seek new counsel. [*See*, *e.g.*, R. 490, Final Pretrial, PageID# 4205 ("Mr. Proge has indicated . . . he prefers new counsel.")]. The court conducted no inquiry into the source and nature of the problem during the final pretrial conference on March 26, 2014, [*See id.* at 4203-15], when it could have addressed the problem in a timely fashion.

The district court conducted a limited inquiry of Proge and his counsel during the April 16, 2014 hearing on counsel's motion to withdraw. [R. 587, Withdrawal Hrg., PageID# 9152-55]. This questioning was not adequate because it was structured only to confirm the court's original conclusion that the request was a "ploy" to delay trial. [*See, e.g.*, R. 490, Final Pretrial, PageID# 4211; R. 587, Withdrawal Hrg., PageID# 9151].

In the context of this case, the colloquy was inadequate to determine the actual source, nature, and causes of the breakdown in the attorney-client

20

relationship and the bases for Proge's decision to pursue new counsel. Through suggestive, leading and compound questions, the district court confused the issue of choice of counsel and made it appear as if Proge was trying to delay trial without legitimate cause. [R. 587, Withdrawal Hrg., PageID# 9152-55].

The Sixth Amendment requires more. In *Benitez*, the trial court similarly spoke directly with the defendant about his wishes concerning counsel. 521 F.3d at 635. But the conversation itself only "serve[d] to underscore [the defendant's] confusion about the scope of his right to counsel[.]" *Id.* at 635. Thus, the failure to further inquire amounted to a structural error. *Id.* at 630 ("A violation of a defendant's right to counsel at a critical stage is a structural error, and is therefore not subject to an analysis of whether the error was harmless or prejudicial.").

Here, as in *Benitez*, Proge and counsel informed the court Proge was dissatisfied with counsel and the relationship had broken down. As in *Benitez*, this "trigger[ed] the court's affirmative duty to inquire." 521 F.3d at 634. Instead of conducting this required inquiry into the "basis of [the defendant's] dissatisfaction," *id.* at 631, the court focused on counsel's frustration with being unable to convince Proge to accept a plea deal, and its unfounded conclusion that Proge was engaged in a "ploy" to delay trial. [R. 587, Withdrawal Hrg., PageID# 9151-52]. The court's inquiry was deficient. As in *Benitez*, that deficiency amounted to a structural error demanding reversal.

**E. The district court erroneously required Proge to show prejudice, and failed to acknowledge counsel's role in the breakdown of the relationship.**

**1. The district court erred in requiring Proge to show new counsel would be more effective as a pre-condition for exercising his Sixth Amendment right to counsel of choice.**

In *Gonzalez-Lopez*, the Supreme Court clarified that defendants with retained counsel are entitled to choose another lawyer without regard to whether their chosen attorney will be more effective. 548 U.S. at 148 ("Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received."). Generally, a defendant with retained counsel may dismiss his attorney for any subjective reason. *See id.* at 146; *Wilson*, 761 F.2d at 280.

Here, the district court gave decisive weight to its perception of the quality of Proge's retained attorneys when it denied their motion to withdraw and forced Proge to trial without counsel of choice. [*See* R. 282, Order, PageID# 2151 at n. 5 (concluding Proge "did not explain how a new attorney would add to his defense over his current attorneys[.]"); R. 587, Withdrawal Hrg., PageID# 9151 (dismissing Proge's concerns because his lawyers were "two of the best in the state.")].

Proge did not bear the burden of proving a new attorney would be more effective than his current counsel. *Gonzalez-Lopez*, 548 U.S. at 148. An

22

interpretation of the Sixth Amendment that would allow a court to force a defendant to trial under such circumstances would negate the "root meaning" of the Sixth Amendment, which allows the defendant to be "defended by the counsel he believes to be best[,]" regardless of whether the court agrees with that belief. *Id*. at 147-48, 146. By holding Proge to the burden of showing prejudice, the district court committed a structural error and deprived Proge of his counsel of choice. Proge is entitled to a new trial.

**2. Despite clear evidence showing an irretrievable breakdown in Proge's relationship with his counsel, the district court ordered Proge to trial with that attorney.**

Even if a showing of prejudice were required, prejudice is clearly established here. It is difficult to imagine a situation where lawyers and their client could more unequivocally inform a court their relationship was broken beyond repair, and forced representation would deprive the defendant of an effective advocate.

Maceroni informed the district court that "[c]ounsel cannot effectively represent Mr. Proge," [R. 284, Mot. for Reconsid., PageID# 2160], and forcing her to try the case would be "ordering Mr. Proge to trial with ineffective counsel." [*Id*. at 2163]. She gave the court ample evidence to support this claim, since less than a week before trial the attorneys had yet to investigate or discuss potential defenses

and cross-examination tactics. [*Id*. at 2160]. Maceroni did all she could to make the court understand that there was an issue with Proge's counsel.

The district court saw it differently. It believed counsel was "offering [Proge] their combined judgment and advice as counsel [to accept a plea deal] . . . which Proge happens to dislike." [R. 282, Order, PageID# 2149]. The district court found "there is no indication that [counsel] somehow intimated that they would not follow their client's ultimate decision" to go to trial. [*Id*.]. In the court's view, the issue was simple: the "failure appears to be entirely due to Proge." [*Id*. at 2150].

This was no trivial misunderstanding. Before denying a motion to withdraw, this Court requires a district court to fully assess "whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Benitez*, 521 F.3d at 635 (quoting *Iles*, 906 F.2d at 1130 at n. 8). Proge and his counsel attempted to provide that information. By ignoring the evidence and blaming Proge, the district court infringed Proge's Sixth Amendment rights, which demands reversal.

**3. The interests of justice require reversal because denying counsel of choice impaired the rights of Proge and the public.**

By not acknowledging the breakdown between Proge and counsel, the district court failed to consider the full interests of justice. In reviewing a motion to withdraw, a district court's "analysis of [the situation] must consider *both* [the defendant's] rights and the rights of the public." *Cobb*, 466 F. App'x at 463 (citing *Marrero*, 651 F.3d at 467). While "the public has a clear interest in holding the trial," [R. 282, Order, PageID# 2148], the "erroneous deprivation of the right to counsel of choice [has] consequences that are necessarily unquantifiable and indeterminate, [and] unquestionably qualifies as structural error.'" *Gonzalez-Lopez*, 548 U.S. at 150 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)). The district court erred by declining to consider Proge's rights and the implications of ordering him to trial with Maceroni.

**F. The reasons cited for denying Proge's choice of counsel were insufficient to defeat the presumption in favor of the defendant's right to choose counsel.**

A Sixth Amendment "choice-of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied." *Gonzalez-Lopez*, 548 U.S. at 150. There are narrow exceptions to this rule. *Id.* at 152 (citing *Wheat*, 486 U.S. at 163-64; *Morris v. Slappy,* 461 U.S. 1, 11–12 (1983)). Namely, a court may weigh "the right to counsel of choice against the needs of fairness, and against the demands of

25

[his] calendar." *Id.* Yet, "a trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected." *Wilson*, 761 F.2d at 281 (quoting *Linton,* 656 F.2d at 209); *see also United States v. Sellers*, 645 F.3d 830, 834 (7th Cir. 2011) ("a court cannot arbitrarily or unreasonably deny a defendant the right to retain chosen counsel").

In *Wilson*, this Court held it was arbitrary for a district court to "fail[] to heed [a defendant's] expressions of dissatisfaction" based on the district court's misconception of the nature of the defendant's concerns. *See* 761 F.2d at 282. Defendant Wilson wished to dismiss his retained attorney after he discovered the attorney had not prepared for trial. *Id.* at 281 at n. 10. Yet, because the discovery came on the morning of trial, the district court did not honor the defendant's request and forced him to trial with the attorney. *Id.* This Court held the defendant's "right to choose the counsel to present his defense was unconstitutionally abridged," *Id.* at 287, and found the district court had failed to show adequate "respect for the individual" by valuing its trial calendar above the defendant's Sixth Amendment rights. *Id.* at 286.

The district court's denial of Proge's Sixth Amendment choice of retained counsel was likewise improper. The facts of this case parallel *Wilson*. Wilson moved to dismiss retained counsel for failure to prepare for trial, and Proge did the

26

same.  *Wilson*, 761 F.2d at 281 at n. 10; [R. 587, Withdrawal Hrg., PageID# 9145-46 ("we did not obviously prepare for trial")].   Wilson voiced his concern as soon as he became aware of his attorney's lack of preparation.  *Wilson*, 761 F.2d at 281 at n. 10.  Proge informed the court of his desire to dismiss counsel less than 24 hours after learning his attorneys were not preparing for trial.  [R. 282, Order, PageID# 2146; R. 587, Withdrawal Hrg., PageID# 9145-46].  As in *Wilson*, the district court denied Proge's attempt to dismiss counsel because of the timing of the request.  *Wilson*, 761 F.2d at 281 at n. 10; [R. 282, Order, PageID# 2151 (motion was "untimely")].

If anything, the district court's reasoning was significantly less compelling than the reasoning in *Wilson*, because Proge was merely asking for new counsel—not a new trial date.  Proge informed the district court of his desire to dismiss counsel on March 26, 2014—34 days before trial.  [R. 490, Final Pretrial, PageID# 4205].  While not an eternity, that could have been sufficient time for a new attorney of Proge's choosing to prepare and defend Proge at trial—something his counsel admitted to not doing.  [R. 284, Mot. for Reconsid., PageID# 2160].  Instead, the court's warning that Proge's trial would start on the scheduled date, regardless of whether he had counsel or not, [R. 490, Final Pretrial, PageID# 4211], reflects the district court's concern with everything but Proge's choice of

counsel. This is precisely the type of arbitrary reasoning this Court struck down in *Wilson*. 761 F.2d at 281.

Even if Proge's request to seek counsel of choice would have required the district court to reschedule its trial date, the Sixth Amendment demands that continuance. A district court is obligated to "ensur[e] that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Gonzalez-Lopez*, 548 U.S. at 152 (citing *Wheat*, 486 U.S. at 160). Here, Maceroni informed the court she would be violating five Michigan Rules of Professional Conduct if she were to continue representing Proge. [R. 284, Mot. for Reconsid., PageID# 2160 (citing Michigan Rules of Professional Conduct 1.1, 1.3, 1.4, 1.16(a)(1) and (b)(4))]. Further, ordering Proge to trial with Maceroni appeared unfair to both sides, as the government recommended granting a continuance to because of "potential ineffective assistance of counsel[.]" [R. 268, Govt. Suppl. Br., PageID# 2053-54].

The district court committed a structural error in its denial of Proge's counsel of choice. This court should vacate his conviction and remand for a new trial.

**II.    The district court erroneously entered a judgment of conviction on Count 3, even though the jury found Proge not guilty on that Count.**

Proge is entitled to a judgment of acquittal on Count 3, which alleged possession with intent to distribute cocaine.  The jury found Proge not guilty on this count, [R. 337, Verdict Form, PageID# 2654], but the district court entered a judgement of guilty as to Count 3.  [R. 556, Judgment, PageID# 7020 ("Was found guilty on count(s) 1, 2, 3, 8, 10[.]"); R. 556, Judgment, PageID# 7021-22; R. 589, Sentencing, PageID# 9386 ("term of 360 months on Counts 1 through 3 and 10")].

"[T]he Constitution gives a criminal defendant the right to demand that a jury find him guilty of all of the elements of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 511 (1995).  Where a jury's finding negates an essential element of the offense, the defendant must be acquitted and cannot be retried on that offense.  *United States v. Randolph*, 794 F.3d 602, 612-13 (6th Cir. 2015).  It violates the Double Jeopardy Clause of the Fifth Amendment to allow a retrial when the government fails to prove an essential element of the charge beyond a reasonable doubt. U.S. Const. amend. V (no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."). *Id.*  Here, the jury's verdict found Proge not guilty of possession with intent to distribute cocaine.  [R. 337, Verdict Form, PageID#2654].  To "allow the government "another opportunity to subject [Proge] to factfinding proceedings going to guilt or

29

innocence . . . would be a classic instance of impermissible double jeopardy." *Randolph*, 794 F.3d at 612. The appropriate remedy is to reverse the judgment of conviction of Count 3 and remand to the district court for a judgment of acquittal. *Id*. at 612-13.

**III. The district court erred in denying Proge's motion for directed verdict for insufficient evidence of Counts 1, 2, and 10.**

**A. Standard of Review.**

This court reviews sufficiency of the evidence claims de novo when, as here, the defendant timely moves for a directed verdict. *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007). Under Fed. R. Crim. P. 29(a), Proge moved for judgments of acquittal at the close of the government's case because the government's proof was insufficient to sustain his convictions. [*See* R. 496, Vol. VII, PageID# 5114]. His claims are preserved because no evidence was presented after the court ruled on the motion for a directed verdict. [*See id.* at 5137-44]. The question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**B. The government failed to prove Proge's guilt beyond a reasonable doubt as to the drug conspiracy in Count 1.**

The evidence was insufficient to prove Proge had specific knowledge and intent to join a drug conspiracy. In Count 1 the government charged Proge with

conspiracy to distribute marijuana, cocaine and heroin. To sustain the conviction, "the government must have proved (1) an agreement to violate drug laws, in this case 21 U.S.C. § 841(a)(1); (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). To convict, the jury was required to find that Proge agreed to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The government charged Proge with conspiring to traffic in three controlled substances—marijuana, cocaine, and heroin. [R. 171, Indictment]. A critical theme of the government's presentation of evidence was that Proge was the Powells' third-in-command.[3] Yet by closing arguments, the government realized the evidence did not support this theory, and instead described Proge as "one of the many individuals who drove the money and the drugs[.]" [R. 497, Vol. VIII, PageID# 5211].

---

[3] In its opening statement the government claimed: "These three defendants, Carlos Powell, Eric Powell and Earnest Proge, are the top three members of the Powell drug trafficking ring." [R. 491, Vol. II, PageID# 4235].

**1. The government did not prove Proge knew and intended to join a drug trafficking conspiracy.**

Knowledge of the essential object of the conspiracy is required to prove a defendant joined a conspiracy. *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986) (holding both defendants had knowledge because one purposely involved his compatriots in the scheme and the other was implicated by testimony that he picked up heroin and transactions were arranged between him and another party). Merely associating with conspirators is not enough to establish participation in a conspiracy. *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990) (presence in house where drugs were found and statement "It's a bust!" did not support drug conspiracy conviction). "The distinction is especially important today when so many prosecutors seek to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders." *United States v. Gibbs*, 182 F.3d 408, 422 (6th Cir. 1999). Thus to convict, the government must present evidence showing beyond a reasonable doubt that Proge had knowledge that the essential object of the conspiracy was to distribute drugs.

Proge's case is similar to *United States v. Coppin*. 1 F. App'x 283 (6th Cir. 2001) (unpublished). In *Coppin*, the government offered evidence of the defendant speaking and traveling with his alleged co-conspirators. *Coppin*, 1 F. App'x at

286-87. This Court reversed the conviction, reasoning that absent evidence of knowledge and intent, "the government's case will not succeed merely because there is something 'fishy' about the defendant's conduct. *Id.* at 291. In this case, as in *Coppin*, the evidence offered to prove Proge knew of the conspiracy requires conjecture and inference upon inference, and is insufficient to sustain a conviction for conspiracy. *Coppin*, 1 F. App'x at 289 (citing *Pearce*, 912 F.2d at 162).

This Court has consistently reversed drug conspiracy convictions with even more evidence if it requires conjecture and multiple inferences. For example, in *United States v. Morrison*, 220 F. App'x 389 (6th Cir. 2007) (unpublished), the evidence included the defendant's own incriminating statements; an exchange of money for keys to a vehicle holding drugs in the defendant's presence; and the concealment of the vehicle in the defendant's garage. *Id.* at 390-91. This Court held this evidence did not prove Morrison "had knowledge of hidden *drugs* (as opposed to any other contraband)" in the vehicle. *Id.* at 395. This Court reversed Morrison's conviction because, although the totality of the evidence "admittedly shows Morrison had knowledge of *some* illegal activity, what it fails to show is that Morrison knew the purpose of all this activity centered around drugs—the 'essential object of the conspiracy' in which he was charged." *Id.* (citing *Christian*, 786 F.2d at 211).

Like *Coppin* and *Morrison*, there was no evidence establishing Proge knew of the drug distribution system and acquiesced in the agreement to distribute drugs. The evidence was primarily silent video or surveillance. This evidence does not prove specific intent, and the surveillance showed mere association, not illegal activity. At most, the evidence requires inference upon inference to prove knowledge and intent. Therefore, this Court should vacate Proge's conviction.

The government points to five points of contact between Proge and the Powells. But even taken together, these points do not sufficiently establish knowledge and intent. The government's evidence is analyzed in turn.

### a. The heroin found in Benny Whigham's Volkswagen on June 23, 2010.

On June 23, 2010, agents observed Proge driving and riding with Eric Powell in Powell's Chevrolet Silverado. [R. 494, Vol. VII, PageID# 4659-60]. Proge drove from Chicago toward Detroit in proximity with a Volkswagen driven by Benny Whigham. Officers pulled over Whigham, searched the car and seized heroin. [R. 491, Vol. II, PageID# 4288]. Proge never rode in the Volkswagen. [*See generally id.* at 4279; 4281-4333].

Proge took the next exit off the highway and pulled into a gas station. [R. 491, Vol. II, PageID# 4282]. Proge exited the truck and entered the gas station, where Agent Donovan followed him as he bought cigarettes. [*Id.* at 4283; R. 497,

Vol. VIII, PageID# 5302]. Meanwhile, Powell stood in the parking lot, talking on his cell phone. [R. 491, Vol. II, PageID# 4283].

Nothing about this interaction shows Proge knew he was traveling with alleged drug distributors. Being in the vicinity of a car containing drugs does not establish the requisite knowledge and intent for a drug conspiracy. *Gibbs*, 182 F.3d at 422 (holding mere association with conspirators is not enough to establish participation in a conspiracy). Proge did not have any contact with the Volkswagen. When Eric Powell was on the phone during Whigham's arrest, Proge was not present. [R. 491, Vol. II, PageID# 4282]. In fact, Agent Donovan followed Proge into the store and did not testify to any suspicious behavior or anything proving Proge knew the police had seized a quantity of suspected heroin. [R. 491, Vol. II, PageID# 4331].

### b. Proge's September 17 arrest.

On September 17, 2010, using pole camera video surveillance, agents observed the Powell brothers placing three suitcases into a Ford Flex. [R. 493, Vol. VI, PageID# 4570-77]. Eric Powell drove the vehicle to a warehouse in Centerline, Michigan. [*Id.*]. Proge left the warehouse driving the vehicle, while Eric Powell and Earnest's brother, Tobias Proge, followed in a separate car. [*Id.*]. Michigan state troopers pulled over the Flex, arrested Earnest Proge and searched the vehicle. [R. 492, Vol. III, PageID# 4414-18]. Inside the car they found money

packed into locked suitcases, but no drugs. [*Id.* at 4528]. Proge's fingerprints were not found on any of the luggage or money. [R. 494, Vol. V, PageID# 4728-29; R. 497, Vol. VIII, PageID# 5301].

While Proge knew the suitcases were in the Ford Flex, the Flex was not registered to Proge and there is no evidence he knew the money inside was tied to the alleged drug conspiracy. [R. 492, Vol. III, PageID# 4541]. Proge did not have a key to the locks on the suitcases, and his fingerprints were not on any of the bags of money. [R. 494, Vol. V PageID# 4728-29].

### c. Surveillance of Proge on October 1.

On October 1, 2010, agents tracked Eric Powell's Silverado. [R. 496, Vol. PageID# 5090]. Powell entered a hotel, then drove to a location associated with the Powells on Eight Mile Road in Detroit. [R. 494, Vol. V, PageID# 4671]. Eric Powell met his brother, Carlos, and both departed in Eric's truck. [*Id.* at 4672]. Pole camera footage showed Carlos and Eric arrive at the Stricker Street residence in the Silverado. [*Id.* at 4674]. The Powell brothers entered the residence and exited carrying suitcases. [*Id.* at 4675]. The brothers left the house in the truck. [*Id.*].

Later on this date, agents observed Proge driving Eric Powell's Silverado. [R. 494, Vol. V, PageID# 4679]. Together Proge and Eric Powell lifted a heavy

suitcase from the Chevy Silverado into a Toyota Camry parked at the hotel. [*Id.* at 4680]. Proge and Powell then immediately departed. [*Id.* at 4681].

The government's evidence shows Proge helped lift a suitcase into another vehicle. The testimony regarding the Powells' actions earlier that day, however, shows Proge was not present in the early, preparation stage of transporting the suitcase. He had no part in packing the suitcase, and no knowledge of what was inside. Agents never seized the suitcase. This evidence is insufficient on a fundamental level. There is no evidence to prove the suitcase had ties to an illegal drug conspiracy, much less that Proge had specific knowledge and intent.

### d. Surveillance of Proge on October 6.

On October 6, 2010, agents tracked Eric Powell's Silverado to Chicago, [R. 493, Vol. IV, PageID# 4592], and observed a Ford Taurus and Oldsmobile traveling nearby. [R. 494, Vol. V, PageID# 4659-60]. At some point, Proge entered the Taurus and drove from a gas station to a nearby warehouse in Centerline, Michigan, and to the Stricker residence. [R. 493, Vol. IV, PageID# 4593; R. 495, Vol. VI, PageID# 4961]. An individual whom the witness could not identify exited the car and entered the house. [R. 493, Vol. IV, PageID# 4593].

Testimony regarding this date does not even solidly establish Proge was present. Further, the only action upon which guilt can be based occurred when "a subject" placed a suitcase into the Taurus. But there is no evidence as to the

contents of the suitcase. Proge was not identified. Confusion as to which individuals traveled in the three cars makes it impossible to establish Proge's actions, much less knowledge of a drug conspiracy on this date.

### e. The cocaine and money seized from Margarita de Vallejo's vehicle on October 22.

On October 22, 2010, agents used GPS to track Eric Powell's Silverado to a hotel in Ann Arbor. [*See* R. 496, Vol. VII, PageID# 5090; BL-14, Dkt. 14-2506, Brief of Carlos Powell (hereinafter Powell Br.), 4/30/15, p. 48]. Proge drove a Taurus to the hotel. [R. 496, Vol. VII, PageID# 5090]. According to a government witness, Proge moved a suitcase from the Taurus to a Toyota Camry. [*Id.* at 5091]. Margarita de Vallejo's testimony conflicts with the agent's testimony on this point. De Vallejo testified there was more than one person present on October 22 but specifically could not place Proge at the scene. [R. 494, Vol. V, Page ID# 4774-75 ("it was very strange to me that *they* couldn't lift the suitcases) (emphasis added), 4799 (confirming she did not know who was with the individual known as "55")].

There is no evidence to show Proge knew the money seized from the Toyota was tied to an alleged drug conspiracy. Agents may have seen Proge move a bag, but he did not have a key to open the locks on the suitcases, and his fingerprints were never found on any item. [R. 497, Vol. VIII, PageID# 5301].

Taken together, the evidence requires conjecture and inference upon inference to find Proge joined a drug conspiracy, and thus cannot support a conviction for conspiracy. *See Coppin*, 1 F. App'x at 289 (citing *Pearce*, 912 F.2d at 162). The government proved Proge traveled with Powell and assisted him in moving bags. The government's evidence primarily consists of silent video and photo evidence; there are no recorded conversations involving Proge. The evidence established a pattern—the Powell brothers would load suitcases into various vehicles at the Stricker residence. There is no proof Proge knew he was helping facilitate the distribution of drugs or intended to do so; in fact, there is far more evidence to show the Powell brothers intended to distance Proge from their enterprise because they kept everything under lock and key and did all the loading and unloading at the Stricker residence where Proge was not present. The only fingerprints found on any items seized were those of Carlos and Eric Powell. [R. 497, Vol. VIII, PageID# 5301]. There was no testimony regarding what Proge knew, but a government witness testified that Carlos Powell "always complained that he worked too hard, that he always had to do everything himself." [R. 492, Vol. III, PageID# 4447]. Even taken together, the government did not prove Proge had knowledge of and intended to join a drug conspiracy. It simply pieced together incidents of suspicious or "fishy" conduct, and this cannot sustain Proge's conviction. *See Coppin*, 1 F. App'x at 291.

**C. The government failed to prove beyond a reasonable doubt that Proge possessed heroin with the intent to distribute under Count 2.**

Count 2 charged Proge, Eric Powell and Benny Whigham with possession with intent to distribute heroin, aiding and abetting,[4] based on the June 23, 2010, arrest of Whigham and seizure of heroin from the Volkswagen driven by Whigham. [R. 171, Indictment, PageID# 1292]. As discussed above, the only evidence the government offered allegedly connecting Proge to heroin is that he was a passenger in Powell's car on a trip where a separate car was found to contain heroin. Agents never observed Proge moving suitcases into or out of the Volkswagen. Agents never saw Proge driving or riding in the Volkswagen. Nor did the government produce any testimony or recordings establishing Proge possessed the heroin or intended to distribute it. Overall, the record is devoid of evidence showing Proge had any direct connection to heroin. This is insufficient evidence of possession. *United States v. Newsom*, 452 F.3d 593, 609 (6th Cir. 2006) (presence in car where contraband is found and proximity to contraband are insufficient proof of constructive possession, much less actual possession).

---

[4]As discussed below, the court erred by failing to instruct the jury on aiding and abetting.

**D. The government failed to prove Proge's guilt beyond a reasonable doubt as to the money laundering conspiracy charged in Count 10.**

To establish a money laundering conspiracy, the government must prove (1) that two or more people conspired to commit the crime of money laundering and (2) that the defendant knowingly and voluntarily joined the conspiracy. *United States v. Prince*, 618 F.3d 551, 553-54 (2010). The indictment alleged a conspiracy to commit money laundering in two ways: to promote a specified unlawful activity, namely, drug trafficking, or to conceal the nature of the funds. [R. 171, Indictment, PageID# 1296-99]. The charge requires the government to prove Proge knew the property involved represented the drug trafficking proceeds and either intended to promote drug trafficking or knew that the transaction was designed to conceal drug trafficking proceeds or avoid reporting requirements. *Prince*, 618 F.3d at 554.

**1. The government's evidence is insufficient as a matter of law to prove Proge engaged in the requisite financial transaction to convict him of money laundering.**

To prove money laundering, the government must prove a financial transaction occurred. *United States v. Reed*, 77 F.3d 139, 143 (6th Cir. 1996) (holding "[t]here must be a purchase, sale, transfer, delivery, etc.—some disposition of funds" to prove there was a financial transaction). While the government charged Proge with concealing the money found during his September

arrest, these funds are not evidence of a financial transaction and therefore not evidence of guilt of a money laundering conspiracy. *Id.* (distinguishing the mere transportation of funds). Further, the government abandoned the allegation charged in the indictment that Proge used a nominee to purchase or assist in purchasing a boat. [R. 496, Vol. VII, PageID# 5132-33 ("[T]he government doesn't object to . . . the boat [ ] part of the conspiracy being redacted out to the indictment that goes back to the jury.")]. The incidents charged in the indictment are thus insufficient as a matter of law to prove Proge engaged in the requisite financial transaction.

    **2. Even if there were evidence of a disposition of funds, the government did not sustain its burden of proving Proge knew his activities promoted money laundering or intended to conceal drug trafficking proceeds.**

Knowledge is a prerequisite for all sections of 18 U.S.C. § 1956. The government must prove the defendant had "knowledge that the funds are the proceeds of [an] unlawful activity." *United States v. Marshall*, 248 F.3d 525, 546 (6th Cir. 2001). "Entirely speculative" evidence is insufficient to prove the defendant's knowledge. *United States v. McDougald*, 990 F.2d 259, 263 (6th Cir. 1993) (speculative evidence included relationship with known drug dealers, involvement in suspicious activity, and lies to police and at trial). The government's evidence against Proge is similarly speculative. *See id*. at 261-62.

42

The government offered evidence Proge was in possession of suitcases holding money on two occasions: September 17, when he was arrested, and October 22, when he moved suitcases into another car. He was not present when the suitcases were loaded into the Ford Flex on September 17. Agents saw only the Powell brothers, not Proge, at the Stricker residence earlier that day. Eric Powell was the only person placing suitcases into the Flex. [R. 493, Vol. IV, PageID# 4572].

On October 22, agents observed Proge help Eric Powell load suitcases into de Vallejo's car. [R. 494, Vol. V, PageID# 4680]. Earlier that same day, though, Carlos and Eric Powell repeated a pattern of loading suitcases when they arrived at the Stricker residence so Eric Powell could retrieve suitcases and place them in his truck. [R. 496, Vol. VII, PageID# 5089]. Despite extensive surveillance, agents never saw Proge at the Stricker residence, the alleged headquarters of the Powell enterprise.

Moreover, the suitcases were locked before they left the Stricker house, and officers had to cut the locks off. [R. 494, Vol. V, PageID# 4687]. Proge's fingerprints were never found on any of the heat-sealed packages of money inside of the suitcases, while both Carlos and Eric Powell's prints were present. [R. 497, Vol. VIII, PageID# 5301; R. 491, Vol. II, PageID# 4241, 4244]. That Proge knew he was carrying a suitcase from one car to another is not sufficient to prove he knew the Powells were engaged in drug trafficking, and therefore the government

did not prove Proge had knowledge of the Powells' intent to conceal drug trafficking proceeds or knowledge that the funds were drug trafficking proceeds. *See McDougald*, 990 F.2d at 261-62 (suspicious activity is not enough to support an inference that defendant knew funds were drug proceeds). Thus the district court erred in denying Proge's motion to dismiss under Rule 29.

**IV. The court erred by failing to instruct the jury on the elements of aiding and abetting and improperly instructing the jury Proge was charged in Count 4.**

**A. Standard of Review.**

This court reviews jury instructions as a whole to determine whether they "adequately inform[ed] the jury of relevant considerations and provide[d] a sound basis in law to aid the jury in reaching its decision." *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999). Under the plain-error standard, the court "may reverse if (1) there was error that (2) was plain, (3) affected a substantial right, and (4) 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008) (quoting *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005)); *see also United States v. Olano*, 507 U.S. 725, 732 (1993).

44

**B. The court plainly erred by failing to instruct the jury on aiding and abetting.**

If this Court does not reverse Count 2 based on insufficient evidence, it should find the district court plainly erred by failing to instruct the jury on aiding and abetting. Count 2 charged Proge with possession with intent to distribute heroin, aiding and abetting, based on the June 23, 2010, arrest of Whigham and seizure of heroin from his car. [R. 171, Indictment, PageID# 1292].

The district court plainly erred because it did not instruct the jury on the definition or elements of the offense charged. Aiding and abetting was a critical issue at trial because there was no direct evidence connecting Proge to the drugs that were seized from Whigham's Volkswagen on June 23, 2010. There were no recorded conversations or witness testimony establishing Proge knew the drugs were there. To find Proge guilty, the jury needed to rely on inferences to find him an aider and abettor. It was not instructed how to decide this critical question.

The law is clear that when the government charges a defendant with aiding and abetting, "it is necessary that [the] defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949). There must be a finding of an act and intent on the part of the secondary actor in order to uphold an aiding and abetting conviction.

45

*United States v. Fischel*, 686 F.2d 1082, 1087 (5th Cir. 1982). Thus, the government had to prove either that Proge directly or constructively possessed the heroin in the Volkswagen, with intent to distribute, or he knowingly and intentionally aided and abetted in the act.

The district court instructed the jury on the elements of a possession charge, directing the jury: "to find a defendant guilty of this crime, you must find . . . [f]irst, the defendant knowingly possessed cocaine or heroin," and "[s]econd, the defendant intended to distribute the cocaine or heroin." [R. 497, Vol. VIII, PageID# 5345]. The court did not offer any instruction on aiding and abetting and the additional elements required under that charge. The verdict form omitted "aiding and abetting" language and simply asked the jury to find "with respect to the charge in Count 2 of the indictment for possession with intent to distribute heroin." [R. 337, Jury Form, PageID# 2652]. Because the district court omitted any reference to the aiding and abetting charge, the jury was only directed to consider evidence of Proge's guilt of possessing heroin.

As discussed above, there was no evidence directly connecting Proge to drugs found in the Volkswagen. Although the evidence showed association between Proge and the Powells, this was "far too attenuated to impose constructively the act *and* intent requirements of a charge of aiding and abetting

simply through the existence of a co-conspirator's acts." *United States v. Morrow*, 977 F.2d 222, 234 (6th Cir. 1992) (citing *Fischel,* 686 F.2d at 1087).

Based on the evidence, no case of either direct or constructive possession could be made against Proge, so the question of whether he aided and abetted the illegal act was a critical issue at trial. Because this was a case premised on the extent of Proge's association with the Powells, the allegations of aiding and abetting were more decisive to the outcome of this count than Proge's connection to the drugs themselves. The jury should have been instructed to consider the issue and the failure to instruct was plain error. *United States v. Machen*, 576 F. App'x 561, 566 (6th Cir. 2014) (unpublished) (reversing conviction under plain error standard where the court failed to instruct the jury on the age element in an age-of-majority spanning conspiracy).

In deciding whether the error affected Proge's substantial rights, the inquiry is whether the error "affected the outcome of the district court proceedings." *Newsom*, 452 F.3d at 604 (quoting *United States v. Cotton*, 535 U.S. 625, 632 (2002)). In *Machen*, this Court held the third and fourth elements of the plain error standard were satisfied because "[a]lthough a rational jury *could* have found that Machen ratified his participation in the conspiracy after he turned eighteen, it is far from clear that a properly instructed jury *would* have reached that conclusion." 576 F. App'x at 566 (emphasis in original). Similarly, in this case, even assuming

that the jury could have found Proge guilty of actual or constructive possession of the heroin inside the Volkswagen, it is far from clear that it *would* have reached that conclusion had it been properly instructed to consider the actual elements of aiding and abetting, thereby affecting the outcome of the proceedings. For this reason, the Court should reverse the judgment of conviction of Count 2.

### C. The court erred by instructing the jury Proge was charged in Count 4 of the indictment.

The government did not charge Proge in Count 4 of the indictment, which alleged possession with intent to distribute heroin only as to the Powell brothers. [R. 171, Indictment, PageID# 1293]. Count 4 was premised on the Powells' alleged possession with intent to distribute heroin on November 17, 2010. [*Id.*]. Despite the fact the indictment charged three distinct crimes with different factual predicates and different defendants, the district court erroneously instructed the jury that "Carlos Powell, Eric Powell and Earnest Proge are charged in Count 2, 3 and 4 with the Crime of Possession of Cocaine or Heroin with Intent to Distribute." [R. 497, Vol. VIII, PageID# 5345-47]. The court also told the jury that both Carlos and Eric Powell were charged in Count 2, even though only Eric Powell was charged (along with Proge and Whigham) in Count 2. [*Id.*]

An appellate court can reverse convictions based on jury instructions that are confusing, misleading, and prejudicial. *See United States v. Prince*, 214 F.3d 740,

761 (6th Cir. 2000). "A defendant's substantial rights are affected if the defendant is convicted on evidence unrelated to his own alleged activity." *United States v. Blackwell*, 459 F.3d 739,762 (6th Cir. 2006) (describing substantial rights analysis in the context of variance). Furthermore, reversal is required:

> [a] constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.

*United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003).

Such constructive amendments are per se prejudicial and are reversible error. *Prince*, 214 F.3d at 757. In this case the district court explained the charges to the jury in a way that effectively modified the charges against Proge. Its instructions were *per se* prejudicial and require reversal. *Id*.

The instructions were also confusing and misleading and negated the court's own cautionary instructions. "[I]n a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of the evidence relating to each defendant." *United States v. Warner*, 690 F.2d 545, 553 (6th Cir. 1982). To mitigate this danger, courts are often careful to give instructions that the proof against each defendant is not to be used against any other defendant. *Id.* The court gave a similar instruction at Proge's trial. [R. 497,

Tr. Vol. VIII, PageID# 5341 ("It's your duty to separately consider the evidence against each defendant on each charge and to return a separate verdict for each one of them.")].

Here, the district court negated the cautionary instruction by aggregating three distinct counts (2, 3, and 4) and three separate defendants (Proge, Carlos Powell, and Eric Powell) and telling the jury that all three defendants were charged together for a grouping of crimes that should have remained distinct for purposes of the jury's review of the case. [R. 497, Vol. VIII, PageID# 5345-47]. This instruction created a situation where the jury would convict Proge on evidence related only to the Powell brothers instead of his own alleged activity. Thus the instructional error confused and misled the jury, affecting the fairness and integrity of the trial and impairing Proge's substantial rights.

**V. The district court erred in denying the suppression of evidence obtained through warrantless searches when the government tracked Proge's location through the use of cell phone location data, a GPS tracker, and pole cameras.**

**A. Standard of Review.**

When a party has brought a pretrial suppression motion, as Proge did here, arguments contained in the original suppression motion will be preserved. *See United States v. Lopez-Medina*, 461 F.3d 724, 738 (6th Cir. 2006). In reviewing the denial of a motion to suppress, this Court reviews factual findings for clear

error and findings of law de novo. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001).

For this appeal, Proge joins in issues II and III of Carlos Powell's appellate brief, 6th Cir. 14-2506, under Fed. R. App. P. 28(i). Only Proge's right to challenge the searches and seizures is addressed here.

### B. Proge had a reasonable expectation of privacy in Carlos Powell's cell phone, Eric Powell's truck, and the areas viewable by pole camera at the Stricker residence and Centerline warehouse.

"[T]he matter of standing in the context of searches and seizures actually involve[s] substantive Fourth Amendment law [in which] . . . a defendant [must] prove a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct." *Smith*, 263 F.3d at 581-82.

Proge challenges the searches leading to the seizure of his person on September 17, 2010, after which the government seized suitcases from a vehicle Proge was driving. In order to challenge the seizure, this Court must first determine whether Proge had an "actual, subjective expectation of privacy, and second, whether that expectation was a legitimate, objectively reasonable expectation." *See Smith*, 263 F.3d at 582.

**1. The illegally obtained evidence from the pole camera at the Centerline warehouse and the GPS tracker on Eric Powell's car directly led to Proge's September 17 arrest.**

Proge's September 17 arrest was based on evidence unlawfully gathered earlier that day through the use of the GPS tracker on Eric Powell's vehicle and the pole cameras set up at the Centerline warehouse. [*See* BL-14, Dkt. 14-2506, Powell Br., 4/30/15, p. 54].

**a. Proge was arrested on the basis of surveillance evidence and can lawfully challenge the surveillance evidence leading to his arrest.**

Prior to trial, Proge moved to suppress evidence obtained from GPS surveillance of Carlos Powell's cell phone and Eric Powell's truck, and from areas viewed by pole cameras installed at the Stricker residence and Centerline Warehouse. [*See* R. 74, Mot. to Suppress; R. 145, Mot. to Suppress; R. 156, Supp. Brief Mot. to Suppress]. The district court held all evidence obtained after the stop could be admitted because Proge took flight after the initial stop, and he therefore could not challenge the search. [R. 202, Order Denying Mot., PageID# 1642] (citing *United States v. Beauchamp*, 659 F.3d 560, 574 (6th Cir. 2011); *United States v. Baldwin*, 114 F. App'x 675, 682 (6th Cir. 2004) (unpublished)). The court also held all evidence leading to the stop could be admitted against Proge because he did not have a right to challenge the sources of evidence used to justify

his arrest. [R. 167, Opinion and Order, PageID# 1271-72; R. 202, Order, PageID# 1597].

The district court further cited *United States v. Padilla*, 508 U.S. 77, 81-82 (1993) for the rejection of so-called "co-conspirator" standing, but this is unpersuasive for two reasons. First, Proge does not assert vicarious standing, but rather that his individual Fourth Amendment rights were violated. Second, *Padilla* held that "[p]articipants in a criminal conspiracy may have such expectations or interests, but the conspiracy itself neither adds to *nor detracts* from them." *Padilla*, 508 U.S. at 82 (emphasis added).

Here, Proge was seized the moment he was pulled over. The initial seizure was based on evidence that the government obtained in violation of the Fourth Amendment. [BL-14, Dkt. 14-2506, Powell Br., p. 54]. Proge therefore has standing to challenge the underlying sources of evidence that led to his seizure.

"An individual is seized when an officer by means of physical force or show of authority has in some way restrained [his] liberty." *Beauchamp*, 659 F.3d at 566 (quotations and citations omitted). In this case, Proge was seized when police pulled him over and he surrendered to their authority. This was a seizure, not a consensual encounter. *Id*. at 566-567. The "moment of seizure" occurred when Proge complied with the trooper's initial signal and pulled the Flex to the side of

the road.  *Id.* at 567-68 ("[s]topping after being ordered to stop triggers the Fourth Amendment").

In *Beauchamp*, this Court reversed the district court and held that evidence should be suppressed, even though the defendant struggled and attempted to run away from the police after his initial detention.  *Beauchamp*, 659 F.3d at 565 (After the police initiated physical search, "Beauchamp attempted to run."). Because the moment of arrest occurred when Beauchamp first surrendered, and the evidence was discovered before the struggle, his struggle and attempt to run did not break the chain between the evidence and illegal seizure and the discovery of evidence on his person.  *Id.* at 574-75; *see also United States v. Brown*, 448 F.3d 239, 252 (3d Cir. 2006) (holding defendant "Brown was seized before his aborted escape attempt]); *United States v. Dupree*, 617 F.3d 724, 736 (3d Cir. 2010) (affirming suppression of evidence where the defendant ran from the police and discarded handgun but his original seizure lacked legal justification).

Here, the evidence Proge sought to suppress was obtained illegally from the pole cameras and GPS devices before he was seized.  [*See* BL-14, Dkt. 14-2506, Powell Br., pp. 29-64].  As in *Beauchamp*, Proge's flight came after the government illegally acquired the evidence, and his flight cannot serve as an intervening circumstance that breaks the causal chain.  *See Beauchamp*, 659 F.3d at 574.

Proge has the right to challenge the evidence that caused his seizure. In *United States v. Fowler*, this Court held "[w]here a defendant who does not have standing to challenge a search has been illegally arrested, 'the 'fruit of the poisonous tree' doctrine might dictate exclusion of the evidence discovered during the search.'" 42 F.3d 1389, *7 (6th Cir. 1994) (unpublished) (quoting *United States v. Erwin*, 875 F.2d 268, 272 (10th Cir. 1989)).[5]

The same reasoning applies here. Proge was seized. He has an individual right under the Fourth Amendment to challenge his seizure. *Fowler*, 42 F.3d 1389 at *7. Because Proge's seizure was based on evidence that was obtained in violation of the Fourth Amendment, he also has a right to challenge the means for obtaining that evidence. *Id.* Because the evidence leading to his arrest was obtained before his flight from the police, the flight does not break the causal chain of Fourth Amendment violations leading to his seizure. *See Beauchamp*, 659 F.3d at 574.

### b. Proge had a reasonable expectation of privacy in the GPS tracker on Eric Powell's truck.

The district court relied on *United States v. Shephard*, 495 F. App'x 553 (6th Cir. 2012) (unpublished) in holding Proge had no reasonable expectation of privacy in Powell's truck. [R. 167, Order Denying Mot. to Suppress, PageID#

---

[5] In *Fowler*, this Court held the chain was broken by consent, a factor that is not present here. *Fowler*, 42 F.3d 1389 at *1-2.

1270]. *Shephard* held a defendant fails to show a legitimate expectation of privacy in another's vehicle when defendant has never owned, driven, or occupied the vehicle. Shephard, 495 Fed. App'x. at 558. Here, the court failed to acknowledge the facts regarding Proge's expectation of privacy. Proge has both driven and occupied the truck on several occasions, [R. 491, Vol. II, PageID# 4287; R. 494, Vol. V, PageID# 4679]. Thus *Shephard* is distinguishable. Although Proge has no property interest in Powell's truck, he has demonstrated his reasonable expectation of privacy in ways this Court has specified by driving and occupying the car.

### c. Proge had a reasonable expectation of privacy in the area recorded by pole camera at the Centerline warehouse.

The Supreme Court "long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes." *New York v. Burger*, 482 U.S. 691, 699 (1987). "An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable." *Id.* Where commercial premises are open to the public, the expectation of privacy is diminished. *See Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 388-89 (6th Cir. 1987) (commercial premises where public was expected to enter and purchase goods). This case is distinguishable from *Autoworld*. There is no evidence to suggest the Centerline warehouse was generally open to the public to

56

enter and view merchandise.  Because the garage door was generally kept shut and only opened to allow entrance, it follows that the owners of the Centerline warehouse wanted to keep public eyes at bay.

The reasonable expectation of privacy inquiry centers on "whether human relationships that normally exist at the place inspected are based on intimacy, confidentiality, trust or solitude."  *Dow Chem. Co. v. U.S. ex. rel. Burford*, 749 F.2d 307, 312 (6th Cir. 1984) *aff'd sub nom. Dow Chem. Co. v. United States*, 476 U.S. 227 (1986).  The *Dow Chemical* Court found the corporation had a reasonable expectation of privacy from ground-level surveillance because they had a security fence and guards in place.  *Id.*  In this case, Proge's presence in the warehouse derived from his friendship with Eric Powell.  Because of this "human relationship," Proge had an expectation to be free from constant, unchecked, long-term tracking that went beyond public areas and into private locations. *Id.*

**2. The illegally obtained data from Carlos Powell's cell phone resulted in an untargeted, widespread search that infringed on Proge's Fourth Amendment rights.**

A person's mere propinquity to others independently suspected of criminal activity does not, without more, justify governmental intrusion.  *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).  In *Ybarra*, officers obtained a warrant to search a tavern and its bartender.  *Id*. at 88.  Upon entering, officers also searched each of the 9-13 customers present—one of whom was found to have possessed heroin.  *Id*. at 88.

The Supreme Court found this search violated the Fourth Amendment, reasoning that while the search warrant gave officers authority to search the premises and bartender, "it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers." *Ybarra*, 444 U.S. at 92.

As in *Ybarra*, agents invaded Proge's legitimate expectation of privacy by performing a sweeping, rather than targeted, search. Proge's proximity to the Powell brothers resulted in unconstitutional government intrusion, merely due to his being within the widespread drag-net of the DEA investigation. The district court erred in ruling that Proge could not challenge this evidence under the Fourth Amendment.

# CONCLUSION

For the foregoing reasons Earnest Lee Proge asks the Court to reverse his convictions and remand the case for further proceedings.

Respectfully submitted,

*/s/ Kevin Carlson* (P67704)
Kevin Carlson (MI - P67704)
Melissa Salinas (MI - P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic
363 Legal Research Building,
801 Monroe Street
Ann Arbor, MI 48109-1215
Ph: 734-763-4319
kcarlson@umich.edu
salinasm@umich.edu

Counsel for Earnest Lee Proge

Douglas Tifft and Marisa Berlinger
University of Michigan Law School
Federal Appellate Litigation Clinic
Law Students on Brief

December 7, 2015

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify the above brief has been prepared using Microsoft Word 14-point Times New Roman font. Excluding the cover page, table of contents, table of authorities, statement with respect to oral argument, certificate of service, and certificate of compliance, the brief is comprised of 13,236 words, and, therefore, complies with Fed. R. App. P. 32(a)(7)(B).

*/s/ Kevin Carlson* (P67704)
Kevin Carlson
University of Michigan Law School
Federal Appellate Litigation Clinic

# CERTIFICATE OF SERVICE

I hereby certify that this brief was filed on December 7, 2015 using the Court's ECF system, which will send notice of this filing to all counsel of record indicated on the electronic receipt.

*/s/ Kevin Carlson* (P67704)
Kevin Carlson
University of Michigan Law School
Federal Appellate Litigation Clinic

# APPELLANT'S DESIGNATION OF RELEVANT

# DISTRICT COURT AND APPELLATE COURT DOCUMENTS

Case No. 15-1724

Pursuant to Sixth Circuit Rules 28(b) and 30(g), Defendant-Appellant Earnest Lee Proge hereby designates the following relevant district court documents:

| Record # | Description | Date | Page ID # Range |
|---|---|---|---|
| **E.D.Mich. Case No. 2:12-cr-20052-SJM-MAR** | | | |
| 154 | Mot. To Suppress Statements | 11/28/12 | 1145-49 |
| 155 | Mot. To Produce Video Evidence of Sept. 17, 2010 Traffic Stop | 11/28/12 | 1150-53 |
| 171 | Superseding Indictment | 1/15/13 | 1288-1314 |
| 210 | Order Denying Mot. To Suppress Pole Camera Evidence | 7/23/13 | 1670-84 |
| 230 | Order Setting Plea Cut-off Dates | 1/20/14 | 1739-40 |
| 255 | Order Denying Additional Discovery | 4/2/14 | 1983-87 |
| 258 | Counsel's Mot. To Withdraw | 4/3/14 | 1992-98 |
| 259 | Notice of Hrg. on Mot. To Withdraw | 4/8/14 | 1999 |
| 267 | Supp. to Counsel's Mot. to Withdraw | 4/17/14 | 2050-52 |
| 268 | Govt. Supp. Brief re Counsel's Mot. to Withdraw | 4/17/14 | 2053-60 |
| 282 | Order Denying Counsel's Mot. to Withdraw | 4/22/14 | 2144-52 |

| 284 | Mot. for Reconsideration of Order Denying Counsel's Mot. to Withdraw | 4/23/14 | 2159-64 |
|---|---|---|---|
| 287 | Transcript of Final Pre-Trial Conference Continuation | 4/10/14 | 2174-2204 |
| 288 | Mot. for Reconsideration of Order Denying Counsel's Mot. to Withdraw | 4/23/14 | 2205-07 |
| 290 | Order for a Response from Govt. | 4/25/14 | 2214 |
| 298 | Govt. Response to Counsel's Mot. to Withdraw | 4/28/14 | 2370-2373 |
| 299 | Govt. Mot. to Dismiss Counts 11, 12, 13, and 14 | 4/28/14 | 2374-76 |
| 302 | Order Granting Bernard's Mot. for Reconsideration and Denying Maceroni's Mot. for Reconsideration | 4/28/14 | 2400-2406 |
| 311 | Govt.'s Proposed Jury Instructions | 5/6/14 | 2531-33 |
| 315 | Eric Powell's Proposed Jury Instructions | 5/7/14 | 2552-54 |
| 316 | Govt.'s Exhibit List | 5/8/14 | 2555-62 |
| 325 | Order Denying Daniels' and Eric Powell's Motions in Limine and Objections to Jury Instructions | 5/14/14 | 2584-85 |
| 328 | Response to Govt.'s Mot. to Set Sentencing Date | 5/15/14 | 2607-09 |
| 337 | Verdict Form | 5/15/14 | 2648-56 |
| 484 | Stipulation and Order Adjourning | 1/5/15 | 4108-09 |

| | | | |
|---|---|---|---|
| | Proge's Sentencing Hearing | | |
| 490 | Transcript of Final Pre-Trial Conference | 3/26/14 | 4177-4216 |
| 491 | Transcript of Trial, Vol. II | 4/30/14 | 4217-4379 |
| 492 | Transcript of Trial, Vol. III | 5/1/14 | 4380-4545 |
| 493 | Transcript of Trial, Vol. IV | 5/2/14 | 4546-4644 |
| 494 | Transcript of Trial, Vol. V | 5/5/14 | 4645-4807 |
| 495 | Transcript of Trial, Vol. VI | 5/6/14 | 4808-5011 |
| 496 | Transcript of Trial, Vol. VII | 5/7/14 | 5012-5192 |
| 497 | Transcript of Trial, Vol. VIII | 5/8/14 | 5193-5379 |
| 498 | Transcript of Trial, Vol. IX | 5/12/14 | 5380-5410 |
| 499 | Transcript of Carlos Powell Sentencing | 10/17/14 | 5411-5442 |
| 500 | Transcript of Eric Powell Sentencing | 10/17/14 | 5443-5473 |
| 502 | Obj. to PSR and Sentencing Memorandum | 1/28/15 | 5483-92 |
| 518 | Govt.'s Proposed Jury Instructions | 3/16/15 | 5598-5650 |
| 556 | Judgement Against Proge | 6/8/15 | 7020-7027 |
| 558 | Notice of Appeal | 6/10/15 | 7217-18 |
| 585 | Transcript of Status Conf. | 4/17/12 | 9009-25 |
| 586 | Transcript of Mot. to Suppress Hrg. | 12/18/12 | 9026-9102 |
| 587 | Transcript of Mot. to Suppress and Mot. to Withdraw Hrg. | 4/16/15 | 9103-62 |

| 588 | Transcript of Trial, Vol. I | 4/29/14 | 9163-9359 |
| 589 | Transcript of Sentencing Hrg. | 4/17/15 | 9360-9397 |
| - | Pre-Sentencing Report | 8/22/14 | 1-29 |

| Record # | Description | Date | Page ID # Range |
|---|---|---|---|
| **6th Cir. Case No. 14-2506** | | | |
| BL-14 | Carlos Powell's Appellant Brief on Appeal | 4/30/15 | 29-64 |